538 P.2d 406

**Willie B. HARRIS, Petitioner,**

**v.**

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Lerner Shops of Arizona, Inc., Respondent Employer,**

**State Compensation Fund, Respondent Carrier.**

**No. 1 CA–IC 1190.**

Court of Appeals of Arizona,
Division 1,
Department C.

July 24, 1975.

Rehearing Denied Sept. 9, 1975.

Review Denied Oct. 16, 1975.

Davis, Eppstein & Tretschok, by Robert W. Eppstein, Tucson, for petitioner.

Greg L. Folger, Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

Robert K. Park, Chief Counsel, State Compensation Fund, Phoenix, by George B. Morse, Tucson, for respondents employer and carrier.

## OPINION

STEVENS, Judge.

The issues before this Court are whether the carrier furnished complete wage information to The Industrial Commission of Arizona; whether the Commission independently computed the average monthly wage (A.R.S. § 23–1061(F)); and the ef-

fect of the lapse of the 60-day period after the Commission's "notice of average monthly wage."

Willie B. Harris (petitioner) was employed in Tucson by Lerner Shops of Arizona, Inc. (employer) from 15 March 1971 to 22 July 1972. Her stated employment was that of a presser and stock clerk, but she performed any assigned task. On 22 July 1972, one week before her fiftieth birthday, she sustained an industrially related low back sprain which is the foundation of this case. The injury was accepted by the carrier. On 11 September 1972 the carrier sent two documents to the petitioner. One of these documents was a notice of claim status which accepted the petitioner's claim and contained the following:

"[X] Enclosed check $83.85 covers time lost, commencing 7–27–72 through 8–15–72. From this 7 days have been deducted unless the disability has extended through 14 days. Payment has been made on a monthly wage of $196.18 based on the following:

A. ☐ Statutory minimum or estimated monthly wage pending determination of Average Monthly Wage within 30 days.

B. **XX** Average monthly wage at time of injury or exposure (See attached calculation), subject to the final determination by The Industrial Commission of Arizona within 30 days."

The other document was a notice of average monthly wage calculation which contained the following typed information:

"6. EMPLOYMENT STATUS: STEADY [X] INTERMITTENT ☐ SEASONAL ☐ PART-TIME ☐ MONTHS PER YR. 12

\* \* \* \* \* \*

"9. EARNINGS WITH INSURED EMPLOYER FROM 3–15–71 thru 7–22–72

AMOUNT $3200.00 ÷ 496 (Days) = $6.45 x 30.416 = $196.13 AVG.

\* \* \* \* \* \*

"15. AVERAGE MONTHLY WAGE ESTABLISHED ON BASIS OF ITEMS 9, +\_\_\_\_, +\_\_\_\_ $196.18

(Subject to Final Determination of The Industrial Commission of Arizona)

According to employer, claimant is off work a lot due to personal reasons."

On 2 October 1972 the Commission through its duly delegated agent "approved" the carrier's average monthly wage calculation of $196.18. The Commission added the information that the petitioner had no dependents. The 2 October advice was on the standard notice of average monthly wage form and carried the following notice:

"Any party aggrieved by this determination of average monthly wage may apply for a hearing by filing a written application at any office of The Industrial Commission of Arizona within sixty (60) days after the date of mailing of this notice."

There were the usual procedural matters leading up to the 15 June 1973 request for a hearing which request also urged that the average monthly wage was greater than that found by the carrier or approved by the Commission. Evidence was taken on 5 December 1973 and 4 February 1974. The petitioner was reasonably successful in all but her average monthly wage contentions and the issues relating to the average monthly wage are the only issues before this Court.

The two-stage hearing was conducted prior to the 15 April 1975 opinion of this Court in the case of Gordon v. The Industrial Commission of Arizona, 23 Ariz. App. 457, 533 P.2d 1194, in which this Court at 23 Ariz.App. page 460 and at 533 P.2d page 1197, sanctioned and urged the use of offers of proof in workmen's compensation matters.

At the outset of the hearing on 5 December 1973 there was an extensive discussion, as to, among other matters which were rendered moot by the findings and award, the petitioner's position as to the average monthly wage problem. In view of the time lapse between the 2 October 1972 Commission action approving the

average monthly wage and the 15 June 1973 request for a hearing, the hearing officer announced that he would hear no evidence or verbal sworn offer of proof on the average monthly wage issue. He advised that the position of the petitioner could be set forth by memorandum and affidavit. At the 4 February 1974 session this authority was enlarged to include the presentation of facts warranting consideration of a late request attacking the Commission's average monthly wage determination. At the hearing the petitioner unsuccessfully urged that attempting to make an offer of proof by a post hearing memorandum even with the use of affidavits is a poor substitute for the conventional methods of presenting offers of proof at timely places in the development of the record. We agree, but the error was harmless since the petitioner's post hearing memorandum was not adequate to present a reviewable issue.

When the memorandum was filed, no petitioner's affidavit was filed. There was no proof establishing that she did not understand the 60-day notice or the word "aggrieved" contained therein. During her testimony on 5 December 1973 she did state that she did not understand the word "repetitive," the doctor had advised her against repetitive lifting. It is our view that the cases of Mills v. The Industrial Commission of Arizona, 23 Ariz.App. 28, 530 P.2d 385 (1975), and Bernard v. The Industrial Commission of Arizona, Ariz. App., 536 P.2d 705 (1975), are of no assistance to the petitioner under the facts developed in this case.

There was no proof that the figures contained in the carrier's 11 September 1972 notice of average monthly wage calculation were incorrect. Attached to the post hearing memorandum was a form of notice of average monthly wage calculation which was filled in by long-hand and which was obtained from the carrier's file. In addition to the information contained in the form of the same title sent to the petitioner on 11 September 1972, the form in the carrier's file disclosed the following:

"7. BASE RATE OF PAY $1.85 PER HOUR ☒ DAY ☐ WEEK ☐ MONTH ☐ PIECE RATE ☐
PER ABOVE: $1.85 x 37.5 x 4.333 = $300.62 AVG.

"8. ACTUAL EARNINGS 30 DAYS BEFORE INJURY ...... = $——."
It was not established what figures should have been inserted in line 8 nor was there a re-calculation based on the figures in line 7 or the effect of the advice that "claimant off work a lot due to personal reasons." The petitioner urged fraud but failed to establish any fraud.

■ A.R.S. § 23–1061(F) directs that after the carrier sends its average monthly wage figures to the Commission, "the Commission shall thereupon make its own independent determination of the average monthly wage pursuant to § 23–1041." This does not mandate that the Commission is not permitted to use the wage information furnished by the carrier nor does it mandate that in each instance the Commission must embark upon an extensive, independent factual investigation. The mandate of the statute can, in the Commission's judgment, be satisfied by the use of and the recomputation of the figures presented.

■ The opening brief contains an extensive discussion as to the various spaces in the notice of average monthly wage calculation form. The discussion is interesting but academic since no missing figures which truly reflect the petitioner's situation have been furnished and hence no errors in the computation of the average monthly wage can be made.

There being no valid reason set forth upon which the hearing officer could allow a late attack upon the Commission's notice of average monthly wage and since no actual figures were presented there was no basis for recomputation. We find an absence of error in the award which recognized $196.18 as the average monthly wage.

The award is affirmed.

NELSON, P. J., and WREN, J., concurring.