586 P.2d 208

**Ralph T. SCHNEIDEWIND, Petitioner,**

**v.**

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Del E. Webb Development Group, Respondent Employer,**

**Fireman's Fund Insurance Company, Respondent Carrier.**

**No. 1 CA–IC 1957.**

Court of Appeals of Arizona,
Division 1,
Department C.

Sept. 19, 1978.

Rehearing Denied Oct. 19, 1978.

Review Denied Nov. 7, 1978.

**364**

Gorey & Delaney by Edgar M. Delaney, Phoenix, for petitioner.

John H. Budd, Jr., Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

Moore & Romley by Craig R. Kepner, Phoenix, for respondent employer and respondent carrier.

## OPINION

NELSON, Judge.

The petitioner, Ralph T. Schneidewind, injured his back while employed as an operating engineer by the Del E. Webb Development Group, the respondent employer. He filed a claim for workmen's compensation benefits which was accepted by the respondent carrier, and his average monthly wage was in excess of the $1,000 statutory maximum [1] in effect at that time. A.R.S. § 23–1041 E.

In January of 1977, the Industrial Commission determined that the petitioner's medical condition had become stationary on February 18, 1976 and that he had sustained a five percent unscheduled permanent partial disability. On August 12, 1977, the Industrial Commission administratively established petitioner's loss of earning capacity as a result of his unscheduled disability. The petitioner protested this determination and a formal hearing was held on December 13, 1977. As a result of that hearing, the Industrial Commission entered an award determining that petitioner had sustained a loss of earning capacity of $29.00 per month. That award was affirmed on review and is now before us on a petition for special action.

The question before us is a very narrow one:

Does the fact that the hearing officer refused to reduce the petitioner's current earnings by a mathematical calculation designed to show what he would now be earning if he worked only 40 hours a week at an hourly rate, as opposed to more than forty hours at a straight salary per week, render the award unsupported by the evidence?

Our answer to the question is "no".

The evidence is essentially uncontroverted. While working for the respondent employer as an operating engineer, petitioner was paid on an hourly basis and normally worked only 40 hours per week. In his current position as an outside salesman for an auto parts specialty house, he works more than 40 hours per week, although only during the five week days, and is paid a straight salary of so much per week.

 Citing us to the case of *Arizona Public Service Company v. Industrial Commission,* 16 Ariz.App. 274, 492 P.2d 1212 (1972), petitioner urges that the hearing officer was required to determine the average number of hours worked per week by petitioner in his current position, divide that number into his actual weekly salary, to arrive at an hourly rate of pay, and then multiply that apparent hourly rate of pay by 40 hours in order to determine a "base pay" for purposes of calculating petitioner's loss of earning capacity, if any, as a result of his unscheduled injury. The hearing officer took the full amount of the wages paid at the time of the hearing, *Wimmer v. Industrial Commission,* 26 Ariz.App. 524, 549 P.2d 619 (1976), reduced it by an amount attributable to the general increase in wage levels in the interim, as shown by the petitioner's evidence (18.4%), *Charles v. Industrial Commission,* 25 Ariz.App. 280, 542 P.2d 1160 (1975); *Whyte v. Industrial Commission,* 71 Ariz. 338, 227 P.2d 230 (1951); *Arizona Public Service Company v. Industrial Commission, supra,* and arrived at the aforementioned loss of earning capacity. We agree with his conclusions.

"It has been stated on numerous occasions that mathematical exactness in determining loss of earning capacity is a difficult task, especially where the loss is only partial in nature, because of the

1. The statutory maximum has since been raised to $1,250. *See* A.R.S. § 23–1041 E as amended Laws 1977, Ch. 151 § 9.

inconclusive nature of the evidence from which an evaluation must be made. [Citations omitted] *Evertsen v. Industrial Commission,* 117 Ariz. 378, 385, 573 P.2d 69, 76 (App.1977).

Clearly the burden is on the petitioner to show that his actual present earnings do not represent a reasonable basis for measuring his loss of earning capacity. *Arizona Public Service Company v. Industrial Commission, supra.* This Court will uphold the Industrial Commission's award as to the loss of earning capacity if there is any reasonable evidence to support the award. *Scowden v. Industrial Commission,* 115 Ariz. 81, 563 P.2d 336 (App.1977); *Prigosin v. Industrial Commission,* 113 Ariz. 87, 546 P.2d 823 (1976).

The *Arizona Public Service Company v. Industrial Commission, supra,* decision did not make it any more difficult or any easier to arrive at the loss of earning capacity in any given case, nor did that decision establish any mandate to use hourly rates or compare actual hours worked in every instance. The sole holding in that case was that subsequent amendments to A.R.S. § 23–1044 did not require the court to disregard the concepts set forth in *Whyte v. Industrial Commission, supra,* regarding the impact of post-injury increases in general wage levels caused by inflation. As Judge Haire so concisely stated:

"At this point it must be kept in mind that here we are considering *only* a method of adjusting the actual post-injury earnings so as to minimize the distortion which might otherwise be reflected by post-injury earnings inflated by a general increase in wage levels. In the final establishment of the injured workman's diminished earning capacity the Commission must, as required by A.R.S. § 23–1044, subsec. D, consider other factors when pertinent." (Emphasis added) 16 Ariz.App. at 279, 492 P.2d at 1217.

Subsection D of A.R.S. § 23–1044 reads: "D. In determining the amount which represents the reduced monthly earning capacity for the purposes of subsection C of this section, consideration shall be given, among other things, to any previous disability, the occupational history of the injured employee, the nature and extent of the physical disability, the type of work the injured employee is able to perform subsequent to the injury, any wages received for work performed subsequent to the injury and the age of the employee at the time of injury."

Viewing the record in light of the law set forth above, it is manifest that the hearing officer took into consideration all of the items mandated by the statute and decisions in resolving this always difficult question. Looking at the nature of petitioner's present employment, the fact that he has some control over the actual hours he works, since he is on the road an average of four days each week, and the fact that he is paid a straight salary regardless of the actual number of hours, even though they average over 40 hours per week, there is no merit to the contention that the hearing officer erred in computing petitioner's current earning capacity prior to adjusting it for the *Whyte* factors.

The award is affirmed.

WREN, P. J., and EUBANK, J., concur.